DAVID LOVE, Guardian, *v.* M. B. BUCHANAN *et al.*, Executors.

1. LAST WILL AND TESTAMENT: WORD "HEIRS," HOW CONSTRUED.—The word "heirs," when used in a will, will be construed according to its ordinary legal acceptation.

2. LAST WILL AND TESTAMENT: PAROL EVIDENCE, ADMISSIBLE TO EXPLAIN, WHEN.— Parol evidence will not be admitted to supply, contradict, enlarge, or vary the words of a will, nor to explain the intention of the testator, except in two specified cases : 1st, when there is a latent ambiguity arising *dehors* the will, as to the person or subject-matter to be described; and 2d, to rebut a resulting trust.

ERROR to the Probate Court of Monroe county. Hon. W. A. Tucker, judge.

The will of M. B. Buchanan is in substance as follows :

First. That his executors shall dispose of such property as they deem best for the payment of debts.

Second. Special legacies of slaves to certain of his children, to make them equal with other children who have received advancements.

Third. That Lucetha Love, daughter of Emily Love, the child of testator, shall have a small negro, worth about five hundred dollars.

Fourth. That Sarah F. Rawles shall have certain slaves now in her possession, and that she nor her husband shall not further obtain any share of my estate whatever ; that her two sons by her first marriage shall have each a half share, deducting the slaves now in the possession of their mother.

Fifth. That my executors shall dispose of my estate as they think best, and shall " divide my negroes into as many shares as I have heirs, T. M. and Theophilus counting one heir, and that an impartial division by lot be made among my heirs," " and that the proceeds of the balance of my estate be paid over to my heirs."

It was admitted that T. M. and Theophilus, referred to two grandchildren of testator.

M. B. Buchanan testified, that the testator was not friendly

to the father of Lucetha Love. That he had promised to let his daughter live with her grandfather, and had taken her away; and that she had not been in family of testator for several years.

Was familiar with business of testator; had frequent conversations with him just before his death about his will. Heard him say repeatedly that if David Love had permitted his daughter to live with him, he would have made her equal with his children.

Robert Buchanan testified same in substance.

Plaintiff in error objected to the introduction of this testimony; objection overruled and an exception taken.

*Dowd* and *Sykes*, for plaintiff in error.

*Houston* and *Reynolds*, for defendants in error.

HARRIS, J., delivered the opinion of the court.

The record shows that the petitioner, Lucetha Love, is the daughter of Emily Love, who was the daughter of Maximilian Love, deceased. That the said Emily Love, the mother of petitioner, died in the year 1849. That the said Maximilian Love, the grandfather of petitioner, died on the 5th day of April, 1858, leaving his last will and testament, by which, after certain specific legacies, he directed substantially that his executors should divide his estate into as many shares as he had "heirs," and that an impartial division by lot be made among his "heirs."

The will was duly probated and executors qualified, and this petition is filed by the guardian of Lucetha Love for distribution of the estate, claiming for her as one of his heirs-at-law a share of the estate directed by the testator to be distributed among his "heirs."

Upon hearing the cause below upon the petition, answer, and proofs, the Probate Court dismissed the petition, and the cause is brought to this court by writ of error.

Two points are presented for our determination:

1st. Whether, upon the face of the will, the petitioner, Lucetha Love, is entitled to a distributive share of the estate as one of the testator's "heirs."

And 2d. Whether parol testimony is admissible in this case to show that testator intended to exclude petitioner from any portion of his estate beyond the special legacy bequeathed to her.

Upon the first point the language of the will is clear, explicit, and consistent with the testator's natural duty. He shows clearly that he understood the meaning of the word "*heirs*," and intended to use it in its ordinary legal acceptation, clearly embracing petitioner as one of the distributees under his will.

Upon the second point we think it equally clear that parol testimony was inadmissible in this case to show an intention different from that appearing on the face of the will.

Chancellor Kent, in the case of *Mann* v. *The Executors of Mann*, says: It is a well-settled rule, that seems not to stand in need of much proof or illustration, for it went through all the books from *Cheny's case* (5 Coke, 68) down to this day, that parol evidence cannot be admitted to supply or contradict, enlarge or vary, the words of a will, nor to explain the intention of the testator, except in two specified cases: 1st. When there is a latent ambiguity arising *dehors the will*, as to the person or subject meant to be described; and 2d. To rebut a resulting trust. All the cases profess to proceed on one or the other of these grounds. 1 Johns. Ch. R., page 233, and cases cited.

In the case before us, even if such testimony were admissible, we think the court erred in supposing that it established an intention different from that apparent upon the face of the will.

Let the decree of the court below be reversed, and cause remanded for further proceedings in accordance with this opinion.